[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 12, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11992
Non-Argument Calendar

_____

D. C. Docket No. 05-00075-CR-ORL-31-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNY LOUIS TYLER,
a.k.a. Johnny Tyler,
a.k.a. Johnny Lewis Tyler,
a.k.a. Tony Dunk,
a.k.a. Dunk Tyler,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 12, 2007)

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Johnny Louis Tyler appeals his conviction for carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).[1] Based upon the record, we conclude that the evidence was sufficient to support the conviction. Therefore, we affirm.

I. Background

Tyler was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 1), possession with intent to distribute cocaine and five grams or more of crack, in violation of 21 U.S.C. § 841 (Counts 2 and 3), and using or carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 4), and he faced enhanced penalties based on his prior convictions under 21 U.S.C. § 851. Tyler initially agreed to plead guilty to Counts 2 and 4. At the change of plea hearing, however, Tyler denied having any knowledge or possession of the firearm and did not remember how the gun came to be in the car given his unconscious state. Based on this testimony, the court rejected the plea and proceeded to trial on all four counts. Upon Tyler's motion, the court severed the § 922(g) Count and held a bifurcated trial to avoid any prejudice.

---

[1] Tyler challenges only the conviction for the § 924(c) offense on the grounds that the government did not establish possession or a drug trafficking offense. He does not address the remaining counts of conviction. Therefore, he has abandoned those issues. United States v. Smith, 416 F.3d 1350, 1354 (11th Cir. 2005).

The evidence at trial established the following: Police, responding to a report of a car blocking an intersection at about 5 a.m., found Tyler in a running vehicle with loud music playing. Tyler was unconscious, with his foot on the brake, the key in the ignition, and his hand around a bottle of liquor. Looking through the window of the car, police observed the handle of a gun under Tyler's right leg. Because the car doors were locked and the windows were closed, the officers attempted to awaken Tyler by banging on the window and yelling, but Tyler was not responsive. The officers then smashed the window, unlocked the door, removed Tyler from the car, and secured him because of the threat posed by the firearm. Tyler admitted to police that he had been drinking at a local bar and smoking marijuana the night before. Police searched the car and found five bags of drugs, which tested positive for cocaine, in the center console. When police informed Tyler of the drugs they had found, Tyler stated "Five? I knew I had three." Tyler, however, denied any knowledge of the gun.

About two hours later, police conducted field sobriety and breathalyzer tests on Tyler. The parties stipulated that the blood alcohol test showed an alcohol level below the legal limit. The police did not conduct blood or urine tests for any controlled substances.

The car in which police found Tyler had been rented to Tyler the day before

the incident. Tyler was listed as the sole driver on the rental agreement, and the rental company searched each car before renting it.

Expert testimony established that the firearm was a functioning semi-automatic pistol and that the amount of drugs found was 5.7 grams of cocaine in three bags (with each bag holding 2.3 grams, .9 grams, and 2.5 grams respectively) and 15 grams of crack in two bags (with each bag holding 9.4 gram and 5.6 grams respectively).

Over defense objection, the government introduced testimony of DEA Agent Russell Baer who testified regarding his experience with drug trafficking investigations. Baer stated that to determine whether an offense involves drug trafficking, he considers the weight of drugs involved, the type of packaging, and the proximity of any firearm, among other factors. Baer testified that the amount of drugs and type of packaging used in the instant case indicated that the drugs were for sale rather than personal use. He estimated that the retail value of the crack was $1,500. On cross-examination, defense counsel questioned the likelihood of the drugs being for sale given that the drugs were in only a few bags, they were in unequal amounts, there was no cell phone located in the car, there were no scales, cutting agents, or extra baggies, and there was no large sum of cash found on Tyler. Throughout his testimony, Baer adhered to his testimony that the

4

facts were consistent with a street-level dealer and not personal use.  The government then questioned whether it was common for traffickers to use firearms in relation to the transportation and distribution of the drugs.  Defense counsel objected, and the court sustained the objection, concluding that it was just as likely that a trafficker would not use a firearm.

After the close of the government's case, defense counsel moved for judgment of acquittal on all counts.  The court denied the motion on the drug counts, but reserved its ruling on the § 924(c) count.  Tyler presented no evidence, and rested his case.  He renewed his motion for acquittal, with the same ruling from the court.  The jury convicted Tyler of possession with intent to distribute cocaine and crack, finding that the amount of crack was at least 5 grams, and using or carrying a firearm in relation to a drug trafficking offense.  The court then adjudicated Tyler guilty of the § 922(g) Count because the jury's verdict on the § 924(c) count established the possession of a firearm, and Tyler stipulated to the remaining § 922(g) elements.  Tyler renewed his motion for judgment of acquittal.

The court denied the motion as to all counts, finding, <u>inter alia</u>, that although there was insufficient evidence to show "use" under § 924(c), there was sufficient evidence to establish "carrying" through Tyler's possession of the firearm.  The court further found that the conviction for possession with intent to distribute drugs

established the "in relation to" element, noting that the firearm and the drugs were in close proximity and Tyler was the sole occupant of the car. The court sentenced Tyler to 130 months imprisonment. Tyler now appeals, challenging the sufficiency of the evidence on the § 924(c) count.

II. Tyler's Appeal

Tyler argues that mere possession of a firearm is insufficient to establish use under § 924(c) because there was no connection between the drugs and the firearm, he was unconscious and sitting on the firearm when police found him, and the amount of drugs was consistent with personal use. In support of his arguments, he cites Bailey v. United States, 516 U.S. 137 (1995), and Turner v. United States, 396 U.S. 398 (1970).

We review de novo the sufficiency of evidence, resolving all reasonable inferences in favor of the jury's verdict. United States v. Diaz-Boyzo, 432 F.3d 1264, 1269 (11th Cir. 2005). In reviewing the denial of a motion for acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] United States v. Eckhardt, 446 F.3d

---

[2] Federal Rule of Criminal Procedure 29(a) provides that: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29.

938, 944 (11th Cir. 2006) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (footnote added). Because Tyler did not present any evidence following his Rule 29 motion, the sufficiency of the evidence against him must be evaluated solely in terms of the proof presented in the government's case-in-chief. Id.

To convict a defendant under § 924(c)(1), the government must demonstrate that the defendant used or carried a firearm, during and in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A)(i); Smith v. United States, 508 U.S. 223, 227-28, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138 (1993). The government is not required to prove both using and carrying; the statute requires either use or carry. United States v. Chirinos, 112 F.3d 1089, 1095 (11th Cir. 1997).

After a thorough review of the record, we conclude that the evidence was sufficient to support the conviction.

First, this court has held that "[a] central and obvious concept inherent in the physical meaning of the word carry is that of some degree of physical transportation or movement." Diaz-Boyzo, 432 F.3d at 1270; United States v. Mount, 161 F.3d 675, 679 (11th Cir. 1998). A defendant carries a firearm if it is carried directly on his person or carried in his vehicle. Muscarello v. United States, 524 U.S. 125, 131, 118 S.Ct. 1911, 1916, 141 L.Ed.2d 111 (1998); United States v.

7

Frye, 402 F.3d 1123, 1128 (11th Cir. 2005).

In United States v. Young, 131 F.3d 1437, 1438 (11th Cir. 1997), the defendant had three guns in his car while he transported drugs for a possible sale, but no sale was in progress or even imminent when the defendant was arrested and the guns found. This court held that the jury "could reasonably link the vehicle and the guns to drug trafficking activity in order to satisfy the 'carrying' prong of the statute even though there is no direct evidence of a sale in progress or one that is imminent." Id. at 1439; see also Chirinos, 112 F.3d at 1095-96 (finding evidence insufficient to show use, but sufficient to establish carrying where the defendant had two weapons under the seat of the car when he drove to an airstrip to steal cocaine).

Here, the loaded firearm was found under Tyler's leg near several bags of cocaine in a car Tyler rented. The fact that Tyler was unconscious (or asleep) when police found him does not negate the carrying element, as the gun was on his person and in his car at the time. Young, 131 F.3d at 1438; United States v. Quinn, 123 F.3d 1415, 1426-27 (11th Cir. 1997).

Moreover, the evidence was sufficient to establish the "in relation to" element. The Supreme Court has stated that "[t]he phrase 'in relation to' . . . at a minimum, clarifies that the firearm must have some purpose or effect with respect

8

to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Smith, 508 U.S. at 238. "The gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense." Id. at 238 (citations and internal punctuation omitted). Here, the jury found Tyler guilty of possession with intent to distribute drugs. The firearm and the drugs were in close proximity to each other and to Tyler. Given the jury's verdict, and the fact that Tyler "carried" the firearm, the evidence was sufficient for the jury to conclude that the firearm could facilitate the distribution. Accordingly, the government met this element of § 924(c). See Diaz-Boyzo 432 F.3d at 1270-71.

Finally, Tyler's reliance on Bailey and Turner are misplaced. In Bailey, the Supreme Court addressed the "use" prong and held that use required the government show active employment of the firearm rather than mere proximity. 516 U.S. at 143. As noted, however, the "carry" prong is separate, and Tyler's conduct was consistent with "carrying" a firearm. In Turner, the Supreme Court reversed Turner's convictions for possession with intent to distribute cocaine because the amount of drugs was consistent with personal use rather than with distribution. 396 U.S. at 413. However, in United States v. Robinson, 870 F.2d 612 (11th Cir. 1989), this court distinguished possession with intent to distribute crack, concluding that crack represented a more potent form of the drug and

9

therefore, a jury could infer intent to distribute from a lesser quantity than it would for cocaine offenses.  Id. at 613.  In this case, because the evidence showed that Tyler possessed 15 grams of crack cocaine, the jury could infer distribution. Robinson, 870 F.2d at 613.

III. Conclusion

For the foregoing reasons, we conclude that the evidence was sufficient to support the conviction, and we AFFIRM.